I just want to say something to the little kids. You guys were great. You were so well behaved. You were more respectful of the court than many of the lawyers that come in front of us. So I want to tell you what a great job you all did. OK, the next argued case is number 19, 1127 in Re Fought. Mr. Fountain. Good morning, Your Honors. I'm Ryan Fountain, and I represent David Fought and Martin Clanton. To put this case in context, this is the first of three appeals to this court this year that will be dealing with the issue of what happens when the patent office does not have evidence of the level of ordinary skill in the art, LOSA evidence. The second case coming up will be Coastal Industries versus Shower Enclosures America, case number 19-1431. That case is fully briefed and will probably come up for oral argument the first week of December, the first week of January. The third case is Leopardine Moride, case number 19-2121. That case is not fully briefed. The LOSA evidence issues are not crystallized at this point, but it was a substantive appealable issue before the district court. The point is that when the patent office doesn't have evidence of the level of ordinary skill in the art, it creates all sorts of problems in patent cases. And perhaps today we can help solve some of that problem. In summary of this case, there are two basic issues. Imagination is not evidence, and in the anticipation analysis, we have to start at the start. In the reply brief, I pointed out several disagreements with the commissioner's legal and factual contentions, the most troubling of which is the contention that the patent examiner does not have to make a level of ordinary skill in the art determination in an anticipation analysis. Well, that's just flat wrong. Anticipation. This case about whether the preamble deserves patentable weight, the term travel trailer? In part, but before we can even get to that. If it doesn't get patentable weight, then you're left with an analysis about the body of the claim and whether the prior art discloses that. If it doesn't get patentable weight, then what we're left with is the illogic of having to eat your cake and have it too. If travel trailer has no meaning, then how does trailer have any meaning? Then how can the interpretation offered by the commissioner have any meaning at all? And it fails as a matter of logic. Not just the issue of whose eyes are we looking through. We have to look through the eyes of a posita. So yes, the preamble issue is an issue. But before we even get there, anticipation is a question of fact to be reviewed by this court for substantial evidence. But of course, that means it's bounded by rules of law. You can't do an anticipation analysis without first doing claims construction. And claims construction has to be done through the eyes of a person of ordinary skill in the art, a posita, if you will. You don't know what those eyes are until you know what the level of ordinary skill in the art is. If you have no evidence of that, you can't do your claims construction. That's why we're starting at the start when we look at LOSA evidence. Similarly, when we judge by the substantial evidence standard, no evidence is not substantial evidence. Making a factual determination of anticipation. Is there some dispute over what the level of skill in the art is in this case? There is a dispute in that we don't know what it is. When we found out. But that could be, even if you're right, it could be harmless error. Unless you demonstrate to the court that it would have made a difference in this case, then the agency's failure to simply articulate what the level of skill in the art is is nothing but harmless error. Except we did demonstrate that harm. We said specifically there are three types of harm. Since we don't know what your level of ordinary skill in the art is, we don't know what kind of countervailing evidence to offer. If you pegged it high, we would go get declarations and expert testimony. If you pegged it low, we could go get survey evidence to show that you pegged it wrong. Because obviously, it only matters if they peg the level of skill wrong if somebody at the level of skill you think is appropriate would have decided the issue differently. Otherwise, it's harmless error. And that's right, except that we can't... You need to show in this case that their failure to articulate it affected the outcome. Otherwise, it's harmless error. You can't hide behind, well, we're not sure. You have to tell me, why does the level of skill in the art matter? It's a travel trailer. This isn't rocket science. You know, why does the level of skill in this art matter for this claim, this claim? We did do that. In the reply to the final office action when the first issue first came up, we explained that if we knew what the level of ordinary skill in the art is, we could have got evidence, we could have made amendments, we could have even abandoned prosecution. But by not telling us and relying upon what is by definition an arbitrary and capricious decision, we are denied the opportunity to participate. We are then forced to... I've got to tell you, I don't follow your argument at all. It's so abstract and vague. What you need to do is tether your arguments to the facts of the case. Your claim is for a travel trailer, where in the box there's a movable internal wall. And then the PTO relied on prior art references of not travel trailers, but tractor trailers. Tractor trailers where inside the box there's an internal movable wall. Okay, so your argument really needs to be that the PTO failed to give patentable weight to the first few words of your claim, travel trailer, by relying on tractor trailer. Tractor trailer prior art references, in your view, cannot anticipate travel trailer claims. So the question here is whether it was right or wrong for the PTO to essentially delete those first few words, a travel trailer. And so you need to explain to me why that was wrong for the PTO to do. Actually, we did this. The science of tractor trailers versus travel trailers and the level of ordinary skill in the art, I got to tell you, it doesn't move me very much. I mean, these references are pretty much self-defining and self-explanatory. To a degree that's true. If you want to keep talking about level of ordinary skill in the art and the mysteries of what is the level of ordinary skill in the art for travel trailers, and therefore the need for you to perhaps file declarations about a travel trailer versus a tractor trailer, you can do that, but I'm just telling you what I'm thinking about the case. Okay, we did that so far. We did put portions in our brief, both before this court and before the board of attorneys. And we did a number of appeals explaining why refrigerator trailers. Don't tell me what you did. Tell me what the PTO did wrong. What the PTO did wrong, it assumed that a refrigerator trailer is a travel trailer. What the PTO did wrong is it assumed that a bulkhead divider designed to keep cargo from shifting creates two separate compartments, one of which can be a living compartment. The reason that the level of ordinary skill in the art and the procedure matters is those are arbitrary interpretations that we draw out of plain English. What are arbitrary? That a refrigerator trailer is not a travel trailer. Everybody should know that. We should be able to look at a dictionary and do that. The patent office didn't. Well, the patent office didn't feel like it needed to because it didn't feel like the opening words of travel trailer deserve any patentable weight. So that's a legal question. Now, your challenge is to explain why that was legally erroneous for the agency to elect to give no patentable weight to the phrase a travel trailer in your claim. In short, it was erroneous because you don't always ignore a preamble, if that is a preamble. You look to see where those opening words provide meaning and context for the claim. And in this case, it did. We walked through a comparison with Arctic Cat, for example, to show that a travel trailer provides a structural context. If by contrast, you take the commissioner's interpretation, it's intended use, then you put that back into the claims and you read intended use having a compartment. Huh? No, structure has a structure. Structure can have a use, but a use doesn't have a structure. And that's not acceptable even under plain English. So clearly, the commissioner was wrong in that point. But we've come back to the level of ordinary skill in the art is, fundamentally, how do we conceptualize what happened here? That's where I was going with it. But yes, a travel trailer is not a refrigerator trailer. No question about it. Your honors, I would reserve the remainder of time for rebuttal unless you have any other specific questions I can address at this point. All right, you've raised all the issues you want us to consider? Yes, your honor. Okay, thank you. Let me please the court, your honor. Mr. LaMarca. Yeah, I think the agency approached this case as a simple claim, it's not complicated. The claim says travel trailer and it defines in the body of the claim basically a movable wall in a trailer compartment. Except that it also, in the body of the claim, refers to the travel trailer. It is still, the agency has argued that it's in the preamble and therefore not a limitation. But it's not just in the preamble, it's in the body of the claim as well. So why isn't it a limitation where it appears in the body of the claim? I think regardless of whether it's in the preamble or not, the agency's position is it's a statement of intended use. It's a trailer being used for travel purposes. But there was significant extrinsic evidence in this case that was introduced. Two separate pieces of evidence that defined a recreational vehicle, and in particular a travel trailer, as having living quarters, which kind of makes sense to me, though I'm no expert. Kind of makes sense that an RV or a travel trailer would have a living quarters and not be refrigerated for chickens. Correct. And the board addressed that evidence, Your Honor, which, by the way, came in late in the game as- No, the board didn't reject it as late. No, they didn't. So the fact that it came in late is not relevant. Nevertheless, Your Honor, it wasn't something that the examiner had as prior art. In fact, the Miller reference, which is one of the things that appellants submitted with their- But the board accepted it. Yeah, and they looked at it. And so how is a board finding that... So tell me what the board found. I understood them as finding this is simply not a limitation. If you go to page appendix seven of the board decision, you'll see where they addressed those two pieces of evidence that were brought in by appellant. One of them was the Miller reference, which is another patent publication from 2010. And another one comes from, actually, a trademark board decision called the Woodall RV- Yes, but so here's the problem. Here's the problem with this. The board actually says these references don't define structure, really. They're just intended use, right? In general, that's what it says, yes, Your Honor. So the recreational vehicle has a living area and it says a towed recreational vehicle is referred to as a travel trailer. So, and then it says, in other words, Miller distinguishes travel trailers from recreational vehicles primarily in terms of intended use, namely towability. I beg to differ. I think that that's not supported by substantial evidence. And the reason is towability is a structural component of a trailer or a recreational vehicle, right? The reference as a recreational vehicle can drive itself. It then says a travel trailer can't. It has to be towed behind another vehicle. So how is that an intended use as opposed to a structural limitation? There's no dispute that the prior art can be towed. Those are towable trailers. No, no, we're focusing on whether or not the board's decision makes any gosh darn sense. Well, I think if you see further down on Appendix 7, it says most travel trailers are equipped with electric and water capacities. Are you then agreeing with me that towability is not just a statement of intended use, but rather is a structural limitation? I acknowledge that towability is a structural feature of a trailer. We both agree that that finding by the board is definitely not supported by substantial evidence because it doesn't make any sense. Well, no, I think what the board is saying is actually consistent with what you're saying, Your Honor. They're basically saying a travel trailer is a trailer that's towed, whereas a recreational vehicle, you actually drive in the cabin. It's all one piece. And that's what these prior art references are talking about. But if you read further down in the board decision. Prior art references aren't recreational vehicles. No, they aren't, Your Honor. They are trailers. They're tractor trailers. Yeah, and they can carry cargo. They can carry all kinds of things. So this is a claim for a travel trailer. It mentions it, if you want to call it a preamble, it's in the preamble, but it's also in the body of the claim. And let's say these tractor trailers weren't in the prior art. Would Mr. Fott be able to accuse these tractor trailers of infringement based on his travel trailer claim? I think that's why. I'd be shocked if he would. Well, I think that's why the agency made the rejection, Your Honor. I think the point that the examiner was trying to make is, the examiner's reading the claim with not enough structural limitations as a result of that term. In the examiner's view and the board's view, when they look at the language travel trailer and then all they see in the body of the claim is discussion and description of the movable walls and the physical structure of the trailer. What about the case law that talks about when you use a term from the preamble in the body of the claim, then that term in the preamble, yes, it is part of the claim and should be recognized and given patentable weight.  where a term that was used in the preamble, assuming this is a preamble here, that is also recited in the body of the claim is not given patentable weight. Are you aware of a case that does that? I'm not aware of one, Your Honor. So this would be the first one, if we were to do that. I can't say that for sure, Your Honor. Well, it's the first one you and I know about. That I'm aware of. But the point is, first of all, with respect to claim one, it's not referenced in the body of the claim at all. The board pointed that out. With respect to claim two. Wait, wait, it says the travel trailer. But not in the body of the claim. If you treat that as the preamble as Judge Shen proposed, as the board has proposed. No, no, no. A travel trailer having. Correct. The board says travel trailer is the preamble, the word having is the transition word, and the rest is the body. And there's no mention of travel trailer thereafter the word having anymore in claim one. Are we not reading the same claim one? The very last two words of the claim. Right. The travel trailer. You're right. Yes, Your Honor. But the point is. Wait, so it is mentioned in the body, correct? Yes, correct. But what the board is trying to say, and I'm trying to explain it, in claim two it's not mentioned in the body. The board pointed that out. If you look at the board's decision, they explained that in claim one, yes, travel trailer comes up at the end, and in the other claim it's not mentioned in the body. I believe that's in the board decision. But the point is, they're not describing structural features of the trailer in the body. Your point seems to be that the board is not required to read claims the way any ordinary person would read them. No, I'm not trying to make that point, Your Honor, no. That's what you're telling us, right? What I'm trying to do, Your Honor, is explain the board's interpretation of this claim. They view the word as travel, as a functional aspect of a trailer. You're telling us that they can make up after the fact, by the time it gets through the whole appellant process, that no, this is the way it should have been read, except nobody else in the world would have done so. From the very beginning of this process, the examiner has always said that he viewed this as a statement of intended use, as a functional term. The board did the same thing. Well, the examination seemed to have the appropriate balance with the prior art, as you and Judge Chen have been discussing with tractor trailers. Now you're telling us it's something else. No, I'm not, Your Honor. I'm sorry if I was interpreted that way. Let me try to restate it. From the very beginning of this case, when the examiner first picked it up, from the first office action, the examiner viewed this as a statement of intended use. In other words, it could have said landscaping trailer. Okay, if I've got an empty trailer and I throw a lawnmower in the back, now it's a landscaping trailer. They said something that apparently anyone who has a recreational vehicle or whatever, or a travel trailer, knows what they're talking about. Well, and the point is, to the extent that there was any evidence to support that from appellant, and when you look at that evidence, even that evidence that they submitted, they used the words like may, and it may use, and it may have living type of conveniences in it. None of it says mandatorily anything is in there. It isn't the real issue. Whether it would have been obvious to put this partition in a travel trailer when tractor trailers, which otherwise are identical, have such a partition. Well, the reason it's anticipation of rejection, Your Honor, according to the examiner and the board is, the prior art references do disclose all the structural features. They disclose walls, they disclose movable walls, they disclose everything that these claims require. The only thing that they, I'm sorry, Your Honor. In the, why is the board focusing on whether the words in the body, the travel trailer in the body of claim one, is a statement of intended use? I don't understand body limitations to be presumptively intended use, or to be able to even be ignored if there's intended use. Forget about the use of this word in the preamble, this thing's in the body. Agreed. So what you're saying to me, it sounds like you're still arguing about whether the preamble's a limitation, and I'm saying that's almost irrelevant, because this is a claim limitation in the body, and there certainly isn't some presumption against it being a structural limitation under those circumstances. Let's say, okay, let's get past the dispute about preamble, and let's just talk about the language travel trailer. The examiner called it a statement of intended use. Regardless of whether it's in the preamble or in the body, functional language doesn't get ignored, but it's not a structural limitation either. That's the difference. So let's talk about, and I believe- The word trailer is not functional, correct? And the Patent Office gave that weight, because it went out and found a trailer as prior art. So travel trailer is not structural, even though the only evidence of record, the only extrinsic evidence of record which the board discussed, talked about it being structural? Well, that's not what the board said in their decision about that. I understand what they said, but that's what the evidence says. Well, I don't know- So I'm wondering if the board's decision is supported by the- I don't know if that's true, Your Honor. If we go look at the evidence, the board decision quotes the evidence directly, and they quote directly from it, and in the board decision, they say, when we look at this evidence, we see languages like most travel trailers are equipped with electric and water capacities. Yes, but that's not the issue. It says recreational vehicles, as referred to herein, can be motorized or towed, but in general have a living area, which provides shelter from the weather, as well as personal conveniences. And then the personal conveniences is what contains the such as. And they said in general, and they said may, and my point is- Well, it doesn't say may before a living area. But the point is, from the board's perspective, that evidence- It doesn't say may anywhere in that. I think it uses the word most, and it also says, if we read the direct quotes that the board put in the board decision, most popular class trailers. No, no, you're, because, no, you're, I'm focusing on the Miller reference, and you're focusing on the Woodall's reference. Okay, let's look, yeah, let's look at the Miller reference. Okay, wait, so it says, the way you use the words most, it doesn't mean most travel trailers. You really don't know these references, Mr. Wood. Well, I'm looking at, let's look at page 53. I'm talking, stop talking over me. You've done it the entire argument. Yes, your honor. It says probably the single most popular class of towable RVs is the travel trailer. It doesn't say most travel trailers have certain things. The word most appears in the context of recognizing that travel trailers are the most popular class of towable RVs. What am I missing? Well, the part that the board cites is a bit further down that says, most travel trailers are equipped with electric and water capacities, which means they don't all have it. Some of them may, most of them may, but it's not a requirement that everyone has- That's electric and water capacities. That says nothing about whether they have to have living quarters. Okay, and a bunk bed could be living quarters. And we can throw a bunk bed in the back of a cargo trailer. Wait, in the back of a refrigerated car? Who is the bunk bed for? We can turn the refrigerator off. It's a refrigerator, oh my gosh. The point is, it's a use, is the point that the board's trying to make. All these are uses that we're talking about right now. What if the claim had said a recreational vehicle, an RV? It's, you know, that's what it leads with, and then it says it in the body of the claim. Right. Would you be able to use these tractor trailer, refrigerated trailer disclosures as an anticipatory reference? It might be a different case, Your Honor, because that might be a more specific term. If you look at the- Okay, so if- The answer is no? No, I'm saying that it might make a difference. I can't say for sure. Okay, it would make a difference because why, because a recreational vehicle is a understood term of art, and we just can't reasonably conclude that tractor trailers or refrigerated trailers can match and satisfy a claim for a recreational vehicle, right? So what if we were to conclude, based on the evidence that Mr. Falk submitted, that a travel trailer is a term of art? It's an actual category of recreational vehicles, and then if that's the case, then wouldn't we arrive at the same conclusion that a refrigerated trailer, that a tractor trailer couldn't possibly anticipate a claim for a class of recreational vehicles, i.e. a travel trailer? I think that's correct, Your Honor, and the examiner, I think, agrees with your point. If you look at page 33 of the appendix, the examiner said, quote, the applicants were given an opportunity to either amend one or both of their claims to more closely claim only travel trailers that are recreational vehicles, which is basically what you're proposing, or could have even introduced a new independent claim to a recreational vehicle, but instead, they decided to argue that the prior art are not travel trailers. So what the examiner is saying is he's reading the language travel trailer as merely a trailer used for travel purposes, and if there would have been recreational vehicle amended into the claim, that might have had an impact on the way the claim is read. So I think the examiner agrees exactly with what you've proposed. But that's not what's in the claim. What's in the claim is travel trailer. He refused to amend his claim, according to the examiner, even given the opportunity to, and chose not to specifically find it. I guess what I'm saying is if we read the record and conclude that the board is unreasonable in failing to accord the term travel trailer as an understood term of art in a recreational vehicle field, then this can't be a 102 reference. These two references. Yeah, correct, Your Honor. The court is reviewing the claim construction of the agency, and if you find that that claim construction is unreasonable based on this record, this court has the power to review that. Just to be clear that it's not such a broad statement. It's more the specific question that a travel trailer is used in this claim as not just any trailer on earth that can travel, but it's actually an understood term of art in the recreational vehicle arena. And I agree. You know, it's just like a rocket ship. That's a term of art. A dune buggy is a term of art. A travel trailer is a term of art. And so, therefore, tractor trailers, refrigerated trailers can't be any of those things. Correct, then it wouldn't be anticipation. Then the next question would be for the agency to determine whether or not there's some other basis that it's unpatentable. For example, the Miller reference itself appears to disclose a recreational vehicle with a movable wall, which appears to be exactly what this claim requires. And the Miller reference itself is a 2010 date on it. So that itself would probably have to be considered by the agency in the event that you made that determination. But I think where the agency stands today is that it views this as a statement of intended use, regardless of whether it's in the preamble or the body, a statement of intended use. And if it's merely a statement of intended use under the Schreiber doctrine, which is binding precedent on this court, if you've got the disclosed structure and it's capable of that use, it's good enough to anticipate. And in this case, according to the board and the examiner, the prior art, which is like you said, a truck trailer or some other trailer for carrying cargo, if that's capable of carrying any type of living conveniences like a bunk bed, it would qualify. So just to be clear, for you to say that the agency understands the term travel trailer is any trailer that can travel, that's basically saying that what happened here is Mr. Fott coined a term, that it's not really a real term. And then he just sort of smashed two words together, travel trailer, and that's a coined term for any trailer that travels. Yeah, and if he really intended to coin the term, as you say, the specification to be your own lexicographer has to clearly articulate that it's a specialized definition and we didn't see that in this case. If he coined it. Right, if he coined it. And the agency doesn't agree with that at this point, Your Honor. Okay, but no clarification was requested that apparently the examiner understood it the way the applicant and the way it's written without all the rest of this. Right, the examiner read the claim in light of that. How or why should we revise that? This was not an issue, an examination. Yeah, and we're not asking for anything to be revised, Your Honor. In our view, what the examiner did and what the board did here is fine. The claim construction was based on the language of the claim in light of the specification. Later, appellant at during appeal before the board brought in additional evidence to try to show that this term, travel trailer, was like a term of art, the board analyzed that evidence and disagreed. And that's kind of where we're at. Mr. LaMarca, can I ask you just, your time is up and I'm not trying to keep you up here forever, but will you just address the claim that the agency must in every case articulate with precision what the level of skill in the art is before it can do anything else? It's almost like some sort of gatekeeper or something, I don't know, I'm not fond of gatekeepers, but you know, there you go. Here's where we agree, we do agree that when claim construction is taking place at the agency under the broadest reasonable interpretation, that's done with the claim language in light of the specification and from the perspective of an ordinary skilled artist, and we understand that. But we don't agree that in every case an examiner has to make a specific fact finding about the ordinary skill level. This is not an obvious misrejection. He has to make a fact finding about the skill level. I think the question is whether he has to articulate it, right, because he can't actually say how the claims are construed based on a reasonable person. He has to be de facto construing the claims as a skilled artisan. So somewhere in that examiner brain has to be some assessment of what a skilled artisan would be in order to know what that skilled artisan would think. Agreed. But it doesn't have to be written down specifically, but you're right, that actually happens in the process. And if you read the Jung, a quote from the Jung case, In-Rae Jung, or In-Rae Jung, if I'm mispronouncing it, I apologize, all that is required of the office to meet the prima facie burden is to set forth the statutory basis of the rejection and the reference or references relied upon in a sufficiently articulate and informative matter to meet the notice requirement. Here, the examiner's discussion of the theory, anticipation, the prior art basis of the rejection, in our case, the two truck trailer references, and an identification of where each limitation of the rejected claim is shown in the prior art references by specific column and line number was more than sufficient to meet the burden. So under Jung, section 132 requires adequate notice of that rejection, which includes the claim construction where they apply the prior art to the claim. Well, it's more than sufficient to meet the notice, possibly in the first instance. Of course, had the applicant then argued that no, a skilled artisan would have been this person and that person would have known this, that, or the other thing, you know what I'm saying. Like if it comes into dispute, even though not stated what the level of skill in the art is initially by the examiner, if the applicant brings it into real dispute, like it would make a difference. Certainly then the agency would be required, wouldn't it, to say what the level of skill in the art would be. I agree, Your Honor, but in this case, what happened was the appellant made an argument saying we think that claim is more than a use statement than an intended use statement. We think an ordinary artisan might view that differently. They presented no evidence at all. The examiner looked at the claim, looked at the spec, disagreed. Later in the game, appellant brought forth this other evidence, the Miller reference and this other document, Woodall. The board then did analyze that evidence and said, you know, we looked at your evidence, but we don't think it's sufficient to show an actual structural limitation. We still agree with the examiner that it's basically a statement of intended use. Now, if they would have come forth with additional evidence on top of that that said, no, no, no, no, no, this is affirmatively a structural feature in this term. Everyone in the art knows it, but that evidence isn't in the record. Because even if you look at this evidence, the evidence the Woodall reference and the Miller reference, if you read them, they even talk about the option of using these cargo spaces for cargo or living space. The point is, even the evidence that they brought forth contemplates using the trailer for multiple purposes. So what the examiner and the board eventually concluded is, this is really all about how you're using a trailer with movable walls. That's really what this boils down to. That's the agency's position. And we do agree with Judge Chen's point. If you think that construction is unreasonable, that's the basis to overturn our anticipation rejection. That doesn't make it patentable, but it would take care of this anticipation rejection. I think that's where we're at. But I don't think there's any problem in the law that Thanks for your time. Can I answer your question? OK. Thank you, Mr. Mamarkoff. Mr. Fountain. Your Honors, I'd like to address what I consider to be three mistakes that the commissioner just made. First, he said the term travel trailer is not in Claim 2. If we look at Appendix 129, and we look at the second to last sentence, we see that the trailer, the trailer, is there in that claim. And obviously, that represents the travel trailer referred to in the first sentence. So we're talking about the trailer as having a longitudinal length defining with respect to structure in Claim 2 as well. You're telling us that this claim can be and should be construed to cover tractor trailers? No. I'm saying it covers travel trailers, because the antecedent basis for the word the trailer, back to the first sentence, is a travel trailer. It does not cover tractor trailers. The second mistake that I believe the commissioner just made is in saying that the examiner viewed from the outset this was a matter of intended use. No. That is nowhere in the first office section. That comes up in the final office action after supposedly we had our chance to amend not knowing what we were shooting against. The third comes to the issue of young. In the young case, a definition or articulation of the level of ordinary skill in the art was not a direct issue in that case. We've made it a direct issue here. When we found out that claims construction was what was going on, we asked for that evidence specifically. Can I ask you about the Miller reference? The Miller reference, yes. The travel trailer? Yes. Does it disclose a movable interior wall? Yes, it does. So why doesn't that anticipate? OK. The claim is extremely simple. The claim. Our claim is extremely simple. It's a travel trailer with two compartments and an interior movable wall so that you can change the relative size of two compartments in the travel trailer, period. So why doesn't Miller anticipate that? To be fair, sir, I wrote the Miller reference. So then you can tell us, can you please explain why Miller is? I can't do that without being fair to Forest River Industries, who now owns that patent. We believe that our invention is separate and distinct from theirs. But without opposing counsel here to defend himself, I'd be reluctant to do that. OK, but you agree with me that Miller discloses a travel trailer with an interior movable wall. Yes, that doesn't have the rest of the features of the claim. OK, there are no other features of this claim. So getting back now to the actual references in this case, your tractor trailer, your refrigerated trailer, prior art references, why isn't it painfully obvious to modify a travel trailer to have an interior movable wall like it was already known in the art for other types of trailers? Very good question. But to answer that, we have to know what a pasita is. And the level of ordinary skill in the art, nothing that's critical in this industry. Well, can you just tell me, like we're two people having a conversation, tell me what's the genius move here of having an interior wall that's movable for a travel trailer compared to an interior movable wall for other kinds of trailers that was already known in the prior art? Because people who design travel trailers don't design refrigerator trailers. They don't know about that technology that's not within their level of skill. OK? Your Honors, are there any other questions I can help you with? Then I thank you for your consideration. Thank you. Thank you both. The case is taken into consideration. Thank you.